In the Matter of Joseph A. KOPF, Bankrupt.

No. 65–B–310.

United States District Court
E. D. New York.

May 1, 1969.

---

Goldman, Horowitz & Cherno, Mineola, for bankrupt; Seymour J. Silberberg, Mineola, of counsel.

Richard M. Roberts, Acting Asst. Atty. Gen., Johnnie M. Walters, Asst. Atty. Gen., Fred B. Ugast, John S. Kingdon, Attys., Dept. of Justice, Vincent T. McCarthy, U. S. Atty., Howard E. Babbush, Asst. U. S. Atty., for the United States.

BARTELS, District Judge.

This is a petition for review of Referee Rudin's decision upon the meaning of the phrase "legally due and owing" in the 1966 amendment to Section 17(a) (1) of the Bankruptcy Act (11 U.S.C.A. § 35(a) (1)), the pertinent portion of which reads:

"*Debts Not Affected by a Discharge.* (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy * * *."

The issue involves a claim for Federal personal income taxes of a bankrupt which was filed as a provable priority claim under Section 64(a) (4) of the Bankruptcy Act, as amended (11 U.S.C.A. § 104(a) (4)) and held dischargeable under Section 17(a) (1), as amended, upon the predicate that the taxes became "legally due and owing" within three years preceding bankruptcy.

On April 1, 1965, Joseph A. Kopf filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act and was adjudicated a bankrupt on May 6, 1966. The District Director of Internal Revenue filed a claim, as amended, for certain payroll and income tax liabilities plus interest for the taxable years 1960–1964, in the sum of $38,888.20. The Referee allowed the Director's claim as a priority claim for the years 1962, 1963, and 1964 but disallowed the priority personal income tax claims for the years 1960 and 1961 upon the ground that these taxes had been discharged in bankruptcy.

The only tax in dispute is the 1961 Federal personal income tax, which the Referee held became "legally due and owing" on December 31, 1961, although not payable until April 15, 1962, and accordingly did not fall within the three-year period exception specified in Section 17(a) (1), as amended. The Government contests this conclusion upon the ground that the 1961 taxes did not become "legally due and owing" until April 15, 1962, when the taxpayer was required to file the return. Unfortunately, there is no definition of the phrase in the Code and the concept of "legally due and owing" has different meanings depending upon the various

taxes imposed under Federal or State law.

## I

■■ The problem here is twofold: (1) What is the nature of, and under what law are the taxes imposed; and (2) for what purpose is the claim classified under the Bankruptcy Act. In the first case it is well settled that the construction of a State statute imposing State taxes, will be followed by the Federal court, People of State of New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405 (1924), and it is equally well settled that Federal courts will rely upon their own construction of Federal tax statutes. We are not concerned here with a State taxing statute, nor are we considering the provability of claims under the Bankruptcy Act. It must be recognized, however, that in the context of State statutes imposing franchise or other local taxes and of Federal statutes imposing withholding taxes, the courts have held that such taxes become "legally due and owing" as provable claims in bankruptcy at the time the obligations accrued or became absolute, although they had not ripened into an obligation to pay and were not payable until a date subsequent to bankruptcy. In re Connecticut Motor Lines, Inc. (provability of Government's claim for income withholding and social security taxes arising from wages accruing prior to bankruptcy, but paid during bankruptcy, for which the Government filed no proof of claim), 336 F.2d 96 (3d Cir. 1964); State of New Jersey v. Anderson (provability of a preference claim for corporate franchise taxes upon the basis of a tax upon capital stock outstanding on January 1st, prior to bankruptcy, although the tax return and assessment were made after bankruptcy), 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); In re International Match Corp. (provability of Delaware corporate franchise tax claim assessed before but payable after bankruptcy), 79 F.2d 203 (2d Cir. 1935), cert. denied, State of Del. v. Irving Trust Co., 296 U.S. 652, 56 S.Ct. 368, 80 L.Ed. 464 (1935); In re Sherwoods (provability of a New York State Real Estate Tax assessed against a lessee prior to bankrutpcy, but payable after filing of the petition), 210 F. 754 (2d Cir. 1913). In In re Connecticut Motor Lines, Inc., *supra*, 336 F.2d at p. 104, the Court of Appeals for the Third Circuit, in determining the availability to the Government of filing a priority proof of claim for Federal income withholding and social security taxes, said:

> "It is well settled that the term 'legally due and owing' does not mean 'payable.' And '[i]t does not follow that taxes are not due and owing from the citizen * * * because the state has prescribed some method exclusive in its character for their collection.' "

Thus, Collier on Bankruptcy, Vol. 3A, Ch. VII, ¶ 64.405, p. 2179 (14th ed.), in referring to the filing under Section 64(a) (4), as amended, of provable fourth priority tax claims, whether State or Federal, makes the following observation:

> "A distinction must be made in all cases between the accrual of a liability before the petition is filed, though that liability has not yet ripened into an obligation to pay, and the situation where there is no liability whatever until all determinative facts are in existence. The time of the accrual of the obligation to pay rather than the time when the obligation is to be discharged by payment, is the controlling factor".

As hereafter disclosed, Collier was not in this discussion referring to the dischargeability under Section 17(a) (1) of those provable tax claims entitled to a priority under Section 64(a) (4).

## II

Two reasons appear why this Court need not follow the esoteric meaning of "legally due and owing" employed by the above authorities. In the first place, we are not dealing with provability but with dischargeability of a tax claim. In the second place, we are dealing with the interpretation of the term "legally due and owing" as applied to the imposition

of the tax under the Federal income tax statute. If in that statute the term obviously means the date of payment rather than the date the liability accrued, then this Court must give that date some meaning in order to harmonize the wording of Section 17(a) (1) with the wording of the Federal income tax statute.

It is appropriate, at the outset, to observe that the word "owing" when used together with the word "due" has, in connection with the provability of claims, taken over the entire meaning of the phrase. According to Webster's International Dictionary (2d Ed.), "due" is etymologically derived from the French "devoir" and the Latin "debere", meaning "to owe" or to be indebted. However, "due" has also acquired over the years the connotation of a definite or precise date when a debt matures and becomes payable—and when "due" is used together with the word "owing", this meaning of "payable" appears to be logical, otherwise the use of "due" becomes tautological. In the commercial, business and finance world a note or obligation becomes due upon the date when payment must be made and not before, although it is owing before the due date. See 1 Bouv. Law Dict., Rowle's Third Revision, p. 946.

A reference to the provisions of the Federal income tax statute here involved is necessary for the determination of the issue. Section 6072(a) of the Code provides that income tax returns made on the basis of a calendar year "shall be filed on or before the 15th day of April following the close of the calendar year and returns made on the basis of a fiscal year shall be filed on or before the 15th day of the fourth month following the close of the fiscal year, except as otherwise provided * * *". Subchapter A of Chapter 62 of the Code entitled: "Place and Due Date for Payment of Tax", provides in Section 6151 (a) thereof that the person required to make the return shall "pay such tax to the internal revenue officer with whom the return is filed and shall pay such tax

at the time and place fixed for filing the return". Section 6151(c) of the Code reads as follows:

"(c) Date Fixed for Payment of Tax.—In any case in which a tax is required to be paid on or before a certain date, or within a certain period, any reference in this title to the date fixed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax)."

Section 6501, imposing a limitation upon assessment, states that the amount of tax imposed by that title "shall be assessed within 3 years after the return was filed", and Section 6601, referring to the payment of interest, specifically provides that if the tax "is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid."

Procedures for assessing and collecting taxes vary widely among numerous taxing jurisdictions of the United States but it is manifest from the pertinent sections of the 1954 Internal Revenue Code that Federal income taxes are not due until April 15th, although they are calculated for the period ending the prior December 31st and conceivably become owing on that date. In view of the statutory limitation upon the Government to assess delinquent income taxes "within 3 years after the return was filed" and in the light of the statutory provision that interest begins to run upon delinquent taxes only from the last date prescribed for payment of the tax, i. e., April 15th, it would seem incongruous to hold that the income tax became "legally due and owing" on December 31st instead of April 15th of the subsequent year. This conclusion is fortified by other authorities determining when a Federal income tax liability matures and becomes due and payable.

For instance, in Hartman v. Lauchli, 238 F.2d 881 (8th Cir. 1957), cert. denied, 353 U.S. 965, 77 S.Ct. 1048, 1 L.

Ed.2d 915 (1957), the Court found that the Government was a creditor of the bankrupt for the years 1943–1945 though a deficiency was not assessed for those years until 1948, concluding that:

"We believe this because, by the terms of the Internal Revenue Code income tax *liability* matures on the day the return is required to be filed, and the *correct amount* of the tax liability becomes *due* at that time, regardless of when the deficiency assessment may be made. Sec. 6151, 1954 Code * * *". (p. 887.)

In United States v. Northwestern Mutual Ins. Co., 315 F.2d 723 (9th Cir. 1963), involving a taxpayer's action for refund of interest assessed upon its income tax, the Court held that interest on a deficiency resulting from a redetermination of Federal income tax became due and payable as of the date the return was filed, declaring:

"As of the date such a return [federal income tax] must be filed, the tax for the year covered by the return becomes due and payable and interest upon that debt starts to accumulate." (p. 725.)

In Noltze Motor Co., Inc. v. Burrows-Moore Pontiac, Inc., 157 F.Supp. 593 (N.D.Iowa, W.D.1958), the question was whether the Government was a creditor of Noltze on July 12, 1954, the date of a bulk sale, though a jeopardy assessment was made subsequent thereto for an unliquidated amount of taxes claimed to have been evaded for the year 1942 and subsequent years. In determining the issue in favor of the Government, the Court held "that federal income taxes for a particular year became due at the time the taxpayer is required to file his tax return for such year and * * * the Government becomes a creditor of the taxpayer at such time." (p. 596.)

In sponsoring the 1966 amendment to the Bankruptcy Act (§ 17(a) (1), as amended), Senator Ervin, when questioned in Congress during the floor debates whether the phrase "legally due and owing" had a clear meaning, said:

"And when taxes are due on April 15th, they are due and owing on April 15, unless the Internal Revenue Service grants an extension.

Almost 190 million Americans know that taxes are legally due and owing on the 15th of April. The definition of 'legally due and owing' is certainly clear to most taxpayers, and it should be clear to the Internal Revenue Service and the Finance Committee.

\* \* \* \* \* \*

The Internal Revenue Code says, in effect, that taxes are due and owing on the 15th day of April following the preceding year. If you do not pay them then you are subject to penalties as of that date." (112 Cong.Rec., Part 10, p. 13814).

In specifically referring to the application of Section 17(a) (1), as amended, to the dischargeability of priority tax claims, Collier (Collier on Bankruptcy, Vol. 1, ¶ 17.14, p. 1615 (14th ed.)) states:

"As for the date when the tax becomes 'due and owing' the simplest standard to use is the date when the tax return itself is due. Thus, the date would be normally March 15 for corporations and April 15 for individuals of the year following the applicable tax year. Withholding and social security taxes would be deemed due and owing on April 15 of the succeeding year, and federal unemployment taxes on January 31 of the succeeding year.

\* \* \* \* \* \*

Hopefully, therefore, in applying § 17a(1) to determine dischargeability and priority of tax claims, the courts will follow the Government's lead and use as the key date, the date when a return must be timely filed."

A case cited by the Referee in support of his position was In Matter of Nigro Freight Lines, Inc. (D.C.Conn.), 42 Ref. J. 28 (Jan., 1968). In that case a Connecticut Referee held that personal property taxes assessed by the Town of Farmington on October 1, 1962 and

payable in installments beginning the following July 1st, were fixed as of October 1, 1962 and "legally due and owing" as of that date for the purpose of determining dischargeability under Section 17(a) (1). In reaching this conclusion he relied upon the authorities above cited dealing with provability of claims. *Nigro* dealt with State taxes and not with Federal income taxes and consequently can be distinguished on that ground. The Court believes that, in the interest of clarity, it is necessary to point out another distinction, i. e., the difference between the application of the phrase "legally due and owing" to the provability of priority tax claims and the application of that phrase to the dischargeability of such claims. It is recognized that, in the interest of justice, the date a tax claim becomes "owing" although not "due" in spite of the use of the phrase "due and owing", might well be chosen for the purpose of determining provability of claims in order to strike a proper balance between the payment of priority tax claims of the State and Federal governments and the claims of the general creditors in bankruptcy. But there is no reason to perpetuate this unique definition in determining the exemption from dischargeability of prior tax claims under Section 17(a) (1), as amended. By restoring to the word "due" its rightful meaning when used in the phrase "due and owing", the crucial date under Section 17(a) (1) becomes of necessity, the date payment of the income tax is due and not the date when such tax might become owing before it becomes due.

■ After construing the available legislative history concerning the intended meaning of the term "legally due and owing" in the 1966 amendment to Section 17(a) (1) of the Bankruptcy Act and the pertinent sections of the Internal Revenue Code of 1954, the Court concludes that the 1961 Federal income tax of the bankrupt became "legally due and owing" on April 15, 1962 and not before, and hence was not dischargeable within the exception specified in Section 17(a) (1),

as amended. The order of the Referee, dated November 8, 1968, is hereby reversed to grant priority status to the bankrupt's 1961 Federal tax liabilities under Section 64(a) (4) of the Bankruptcy Act, as amended. This is an order.