*1300 RENFREW, District Judge:
The United States of America appeals from a judgment entered in favor of plaintiff-appellee Pan American Van Lines, Inc. (“taxpayer”), in a suit for refund of the interest paid by taxpayer with respect to its 1965 tax liability. The district court made findings of fact and conclusions of law and entered judgment for taxpayer.[1] We agree with that result.[2]
The facts were stipulated below and are not challenged on appeal. Taxpayer, a California corporation, filed its 1965 calendar year corporate income tax return on September 15, 1966, rather than March 15, 1966,[3] having been granted an extension of time for filing the return. Although taxpayer reported $416,406.00 of taxable income for its 1965 tax year, net operating loss carryforwards arising from net operating losses in 1962, 1963, and 1964 eliminated taxpayer’s 1965 tax liability. Subsequently, the Internal Revenue Service (“IRS”) proposed adjustments to taxpayer’s 1963 and 1964 tax returns that eliminated the net operating loss carryforward previously available to offset 1965 income.[4]
This change, combined with other adjustments to taxpayer’s 1965 return, resulted in taxable income for 1965 in the amount of $158,052.15. The IRS allowed a net operating loss carryback from 1967 to offset taxpayer’s 1965 income. On December 17, 1970,[5] the IRS assessed against taxpayer “restricted interest” in the amount of $7,334.64, basing the assessment on taxpayer’s underpayment of its 1965 tax liability from March 15, 1966, to December 31, 1967, the end of the tax year in which the net operating loss occurred. See I.R.C. § 6601(d)(1).[6] On December 1, 1971, taxpayer paid IRS $7,342.64, the restricted interest assessed plus an $8.00 collection charge.
Prior to the IRS assessment of this interest, on August 28,1969, an involuntary petition in bankruptcy had been filed against taxpayer. Shortly thereafter, taxpayer filed a petition for an arrangement pursuant to Section 321 of the Bankruptcy Act, 11 U.S.C. § 721. An order of confirmation under Chapter XI was entered on April 8, 1970. Although the IRS filed two proofs of claims in the bankruptcy proceeding, it did not file a claim for corporate income taxes or interest.
On April 5, 1972, taxpayer filed a claim with the IRS seeking a refund of the restricted interest paid alleging that this tax liability had been discharged by the order of confirmation. The IRS denied the claim, and taxpayer filed below for a refund.
Under Section 371 of the Bankruptcy Act, 11 U.S.C. § 771 (1970), upon confirmation of an arrangement, a debtor is discharged of tax liabilities to the extent they would be dischargeable under Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a). Section 17(a) in turn provides in relevant part:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in *1301 part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy * 11 U.S.C. § 35(a)(1) (1979).
The issue presented to us by this case is whether taxpayer’s liability for the restricted interest was “legally due and owing” within three years preceding bankruptcy.[7]
Here, the petition was filed on August 28, 1969. The Government contends the tax should be considered “due and owing” on September 15,1966, the date the return was filed, in which case the liability was not discharged in bankruptcy. Taxpayer argues that the tax was due on March 15, 1966, the date the return would have been due had an extension not been granted, and that liability was therefore discharged.
The District Court concluded that “[t]axes for the calendar year 1965 became due and owing by Plaintiff on March 15, 1966.” As support for its selection of the tax return date as the date that taxes became “legally due and owing,” the District Court cited Section 6151 of the Internal Revenue Code. Section 6151(a)[8] states:
“(a) Except as otherwise provided in this subchapter, when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return).” I.R.C. § 6151(a) (emphasis added).
We agree that Section 6151 supports taxpayer’s contention that the tax is due on the date the return is originally due, not on the date of any extension of the filing date. However, there are additional reasons for measuring dischargeability under Section 17(a)(1) by use of the March 15 tax return date.
The phrase “legally due and owing” was added to Section 17(a)(1) by amendment in 1966.[9] Although both parties cite us to testimony, committee reports and debates extending back to the introduction of this legislation in the First Session of the Eighty-Fifth Congress, we fail to perceive any really meaningful legislative history that definitely addresses the precise question raised by the appeal before us.[10] The *1302 phrase “legally due and owing” has been construed by academic commentators as presenting three alternative dates from which to measure the three-year period in Section 17: the close of the calendar or fiscal year, the return date, or the date of an assessment if one is made.[11] Use of the return date has been recognized as the most simplistic approach[12] and was the date upon which commentators initially believed the Government would rely.[13]
The few courts which have considered which of the three alternative dates should be used in determining when taxes become “legally due and owing” have selected either the last day of the period for which liability accrued or the return date. Mendenhall v. United States, Bankr.L.Rep. (CCH) ¶ 64,431 (S.D.Ill.1972) (“last date fixed for filing of return, * * * April 15, 1974”); In re Certified Credit Corp., 329 F.Supp. 1402, 1403-1404 (S.D.Ohio 1971) (“December 31, 1959, the close of the tax year or. * * * no later than March 15, 1960, the ‘return date’ ”); In re Reeves, 70-1 U.S.T.C. ¶ 9, 314, at 83,185 (D.Colo. 1970) (April 15, the return date); In re Kopf, 299 F.Supp. 182, 187 (E.D.N.Y.1969) (April 15, the return date). See also United States v. Adams Bldg. Co., Inc., 531 F.2d 342, 343 n.2 (6 Cir. 1976) (dictum); Fotochrome, Inc. v. Comm’r, 57 T.C. 842, 846-847 (1978) (dictum). Our research has failed to disclose any court which has held taxes to be “legally due and owing” later than the original date for filing a tax return.
In concluding that an individual’s federal income taxes should be considered “legally due and owing” on April 15, the district courts in In re Kopf, supra, 299 F.Supp. at 185; and In re Reeves, 70-1 U.S.T.C. at 83,185, relied upon the fact that under Section 6601[14] of the Internal Revenue Code, interest begins to run upon delinquent taxes only from the last date prescribed for payment of the tax, in each case *1303 April 15. We agree with taxpayer’s contention in the instant case that since the IRS assessed restricted interest on the 1965 tax deficiency commencing on March 15, 1966, the IRS must have considered the 1965 taxes “due and owing” on that date.
We find unpersuasive the Government’s argument that taxes should not be considered “legally due and owing” on the date they are due to be paid because the legislative history of Section 17(a)(1) of the Bankruptcy Act indicates that the three-year period employed in that section was meant to coincide with the three-year statute of limitations for assessment of federal income taxes. Section 6501(a) of the Internal Revenue Code states in pertinent part:
“(a) * * * [T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.” I.R.C. § 6501(a).
Since Section 6501(a) grants the IRS three years after the return is actually filed to audit the return and make any necessary assessment, and since Congress selected the three-year period in Section 17 in part because it coincided with the three-year assessment period for federal income tax cases, the Government concludes that Congress must have considered taxes “legally due and owing” when the return is actually filed. Under this construction, in cases involving federal income taxes the three-year period of Section 17 would coincide with the three-year assessment period even when the taxpayer had been granted an extension of time to file its return.
We must reject such an interpretation. First, it demands a very strained reading of Section 17; most people would certainly regard taxes as “due” when they are originally required to be paid. Second, it ignores the fact that if Congress had intended to have the assessment period coincide exactly with the time period established in Section 17, the 1966 amendment could have specifically so provided. The legislative history indicates that at the hearings the Treasury Department recommended,[15] and the Senate Finance Committee stated in its report,[16] that the 1966 amendment should be interpreted as referring to the assessment date as the initial point from which the three years were to be measured. Significantly, the Finance Committee’s substitute bill,[17] which would have measured the time taxes became “legally due and owing” from the assessment date, was not even put to a vote in the Senate after another proposed modification of the same bill was defeated.[18] The Senate Judiciary Committee report on the proposed amendment which finally passed specifically adopted the minority position of the Senate Finance Committee.[19] Finally, the Government cannot convincingly place emphasis on Congress’s desire for a perfect correlation between the Section 17 time period and the tax assessment period, as Section 17 governs dis-chargeability of various taxes, state and local as well as federal, and the three-year statute of limitations on assessment referred to in the legislative history of Section 17 applies only to federal income taxes.
In its consideration of whether the restricted interest paid by the taxpayer was discharged by the order of confirmation, the Government apparently assumed that the interest must have been discharged by the order if the underlying tax liability was discharged. It did not distinguish between the date when appellee’s 1965 tax liability became “legally due and owing” and when the restricted interest thereon became “le- *1304 gaily due and owing.” Such a distinction is not appropriate as the interest partakes of the tax for the purpose of commencing the running of the three-year period as of the original return date.
The term “taxes” in Section 17(a)(1) is not defined;[20] however, Section 6601(e) of the Internal Revenue Code indicates “[i]nterest * * * on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes.” I.R.C. § 6601(e)(1) (emphasis added). Thus, it is clear that if pursuant to Section 17(a)(1) of the Bankruptcy Act and Section 6151(a) of the Internal Revenue Code, appellee’s underlying tax liability was discharged as “legally due and owing” on March 15, 1966, more than three years prior to bankruptcy, then the interest on such liability must also be discharged as “legally due and owing” on March 15, 1966. Such a ruling comports with congressional intent that interest be “collected and paid in the same manner as taxes.”
Although it did not press the severability issue, the Government did argue below that the interest had not been discharged because the determination of the amount of restricted interest taxpayer ultimately owed could not have been made until the tax liability for 1965 had been determined and the 1965 tax liability had been reduced by the 1967 loss carryback. The Government, in this argument that the interest could not have been “due and owing” until the effect of the 1967 carryback had been determined, did not explain how this theory could be reconciled with the language of Section 17. The Government’s reliance in the district court proceedings[21] on In re Laytan Jewelers, Inc., 332 F.Supp. 1153 (S.D.N.Y.1971), was misplaced. That case involved the effect of a net operating loss carryback on dischargeability of a tax liability under Section 17, yet it differed considerably from the instant case.
In Laytan the taxpayer paid taxes for the 1964 calendar year. In 1967, it reported a net operating loss for which there was no tax liability. The IRS paid the taxpayer a refund, tentatively allowing the taxpayer to apply the claimed 1967 loss against 1964 income. In 1968, the taxpayer was adjudicated a bankrupt. During the Chapter XI proceedings, the IRS disallowed certain 1967 deductions, eliminating the taxpayer’s 1967 loss. The issue in Laytan was when the Government’s claim for return of the refund paid the taxpayer became “legally due and owing” under Section 17 of the Bankruptcy Act. The district court in Lay-tan agreed with the Bankruptcy referee’s reasoning that the liability for the return of the refund could not have been “due and owing” in 1964, since the refund was based upon losses in 1967.[22]
The instant case is distinguishable, as in Laytan the taxpayer had already paid its 1964 taxes, and the Government’s claim *1305 arose only because later the Government erroneously paid a refund based on 1967 losses. In this case, taxpayer had never paid taxes for 1965, and interest was assessed because of this underpayment. Although appellee’s 1967 losses were later used to offset the 1965 tax liability, appel-lee was still liable for interest attributable to failure to pay the 1965 tax liability from March 15, 1966, until the end of 1967, the year in which the losses that offset the 1965 tax liability occurred.
The District Court’s decision upholding taxpayer’s claim for refund is affirmed.

. The District Court’s findings and conclusions are not officially reported. Pan American Van Lines v. United States, No. CV-75-1049-FW (C.D.Cal. April 27, 1977).

. This Court’s jurisdiction is based upon 28 U.S.C. § 1291.

. Under Section 6072(b) of the Internal Revenue Code (I.R.C. § 6072(b)), corporate income tax returns filed on a calendar year basis are due on the 15th day of March following the close of the calendar year.

. The District Court found that these proposed adjustments “were ultimately resolved on December 2, 1971, at which time a stipulated judgment for $60,000 in tax liability was entered in the United States Tax Court for the year 1963.” This stipulated judgment conclusively eliminated any net operating loss carry-forward to 1965.

. Taxpayer had agreed to an extension of the statute of limitations on assessment for the 1965 tax year to December 31, 1970. See I.R.C. § 6501(c)(4).

. The District Court’s findings of fact indicate the assessment was made pursuant to I.R.C. § 6601(e). As a result of amendments made to § 6601 in 1975, subsection (e) was relettered subsection (d). See Act of Jan. 3, 1975, Pub.L. 93-625, § 7(b)(1), 88 Stat. 2115.

. Pursuant to Section 1(13) of the Bankruptcy Act, 11 U.S.C. § 1(13) (1966), the date of filing of a petition constitutes the “date of bankruptcy.”

. In its conclusions of law, the District Court relied upon Section 6151(c) which states:
“(c) In any case in which a tax is required to be paid on or before a certain date, or within a certain period, any reference in this title to the date fixed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax).” I.R.C. § 6151(c).
Although Section 6151(c) is perfectly consistent with the general rule set forth in Section 6151(a), we find Section 6151(a) is more directly relevant to the issue raised in this case.

. Act of July 5, 1966, Pub.L.No.89-496, § 2, 80 Stat. 270. Prior to this amendment, all taxes had been non-dischargeable in bankruptcy.

. Both parties rely for support of their respective positions on comments made by Senator Sam Ervin during Senate debate on the amendment. The Government quotes Senator Ervin’s remark that taxes “are due and owing on April 15, unless the Internal Revenue Service grants an extension,” followed by the statement that “the Internal Revenue Code says, in effect, that taxes are due and payable on the 15th day of April * * * .If you do not pay them, you are subject to penalties as of that date.” 112 Cong.Rec. 13814-13815. The Government contends that Senator Ervin considered taxes “due and owing” only when the return is filed, if an extension for filing has been granted. Taxpayer, however, argues that Senator Ervin clearly was referring to extensions of time for payment of the tax, rather than extensions of time for filing the return.
Senator Ervin did not explicitly address the question of whether the granting of an extension for filing a return affects when taxes are “due and owing” under Section 17 of the Bankruptcy Act, and his reference to “an extension” is far too ambiguous to be read as resolving this issue. Apparently, the matter being considered at the time Senator Ervin made these remarks was whether taxes should be considered “due and owing” only after the IRS made an assessment. Senator Ervin clearly rejected this view.
*1302 Given the ambiguity, we do not find the Senator’s remarks to be of any assistance, particularly in light of the Supreme Court’s indications that congressional debate is not entitled to carry the same weight as other more well-reasoned components of legislative history such as committee reports. See, e. g., United States v. Int’l Union of United Auto, Aircraft and Agricultural Implement Workers, 352 U.S. 567, 585, 77 S.Ct. 529, 1 L.Ed.2d 563 (1947).
We note in passing that the language and legislative history of the new Bankruptcy Reform Act, Pub.L.No.95-598, §§ 507(a)(6)(A)(i), 523(a)(1)(A), 92 Stat. 2547, indicate that the issue before us is not one which is likely to arise in the future. Section 523(a)(1)(A) excepts from discharge taxes “for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.” See S.Rep.No.95-989, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5800 (emphasis added).

. See 1A Collier on Bankruptcy, ¶ 17.14 at 1615 (14th ed. 1978); Kingsmill, When and How is a Bankrupt Discharged from Federal Tax Debts?, 31 J.Tax. 180 (1969); Plumb, Federal Tax Liens and Priorities — Agenda for the Next Decade, 77 Yale L.J. 228, 264 (1967).

. See 1A Collier on Bankruptcy, supra, ¶ 17.14 at 1615; Marsh, Triumph or Tragedy? The Bankruptcy Act Amendments of 1966, 42 Wash.L.Rev. 681, 684 (1967). Marsh has noted that use of the return date for purposes of § 17 and for determinations of priority under § 64 of the Bankruptcy Act, 11 U.S.C. § 104 (1979), would, however, cause problems in three situations: (1) where a taxpayer takes advantage of “pay-as-you-go” provisions in 26 U.S.C. §§ 6015, 6016; (2) where use is made of procedures for contesting an asserted deficiency thereby triggering the prohibition upon the collection of a deficiency until the procedures have been exhausted; and (3) where the taxpayer elects to make installment payments or receives extensions of time for payment. Id. at 684-688. None of these concerns are raised in the instant case.

. See 1A Collier on Bankruptcy, supra, ¶] 17.14 at 1615; Kingsmill, supra, 31 J.Tax. at 180.

. Subsections § 6601(a) and (b)(1) provide, in pertinent part;
“(a) If any amount of tax imposed by this title * * * is not paid on or before the last date prescribed for payment, interest on such amount * * * shall be paid for the period from such last date to the date paid.
“(b) * * * [T]he last date prescribed for payment of the tax shall be determined * * with the application of the following rules:
“(1) The last date prescribed for payment shall be determined without regard to any extension of time for payment.” I.R.C. § 6601(a) and (b)(1).

. Hearings on S. 976 (H.R.3438) and S. 917 (H.R.136) before the Senate Committee on Finance, 89th Cong., 1st Sess. 9, 11 (1965).

. S.Rep.No.999, 89th Cong., 2d Sess. 2-3 (1966).

.Id at 22.

. 112 Cong.Rec. 13823 (1966); Plumb, supra, at 264 n. 228.

. S.Rep.No.1158, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News, pp. 2468, 2473. See Plumb, supra, at 264.

.It has been suggested that the ambiguity created by the absence of the definition can be interpreted three ways with regard to the dis-chargeability of interest and penalties:
“First, the subsection could mean that all interest and penalties accruing more than three years before bankruptcy are discharged. Second, it could mean that interest and penalties referring to taxes legally due and owing more than three years before bankruptcy are discharged. Finally, it could mean that interest and penalties are not discharged at all.” (Footnote omitted.) Note, The Ambiguities of Section 17(a) of the Bankruptcy Act of 1966, 3 Tex.Tech.L.Rev. 135, 137 (1971).
Because of our interpretation of Section 6601(e) of the Internal Revenue Code, we find only the first alternative, insofar as it pertains to interest, to be correct.

. We recognize that the Government has not asserted this argument on appeal.

. In reaching this conclusion, the bankruptcy referee both attempted to distinguish, and concluded that he could not follow, In re Able Roofing & Sheet Metal Co., 425 F.2d 699 (5 Cir. 1970). In that case, on similar facts, the court had concluded that the liability should be considered “due and owing” on April 15th of 1961 and 1962, since the loss had been carried back to the 1960 and 1961 calendar years. 425 F.2d at 701-702. We subscribe to the criticism that has been directed at Able Roofíng on the grounds that the obligation to return the refund could not have arisen until the refund had been paid. See 1A Collier on Bankruptcy, supra, ¶ 17.14 at 1616.1.